UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| OHIO FARMERS INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 3:18-CV-860 |
| | ) |
| JACK C. GARNER, JR. and CYNTHIA L. | ) |
| GARNER, individually and dba GARNER'S | ) |
| TRUCK STOP, and TCI, LLC, | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Ohio Farmers Insurance Company ("Ohio Farmers"), by counsel, for its Complaint for Declaratory Judgment against Defendants, Jack C. Garner, Jr. and Cynthia L. Garner, individually and dba Garners Truck Stop (the "Garners"), and TCI, LLC.

## I.      PARTIES & JURISDICTION

1.      Plaintiff, Ohio Farmers, is a corporation organized and existing under the laws of the State of Ohio, having its principal place of business located at 1 Park Circle, Westfield Center, Ohio 44251.  Ohio Farmers is a citizen of the State of Ohio.  At all times material hereto, Ohio Farmers was duly authorized to transact the business of insurance within the State of Indiana.

2.      Defendant, Jack C. Garner, Jr. ("Jack") is a citizen of the State of Indiana residing in Plymouth, Marshall County, Indiana.

3.      Defendant, Cynthia L. Garner ("Cynthia") is a citizen of the State of Indiana residing in Plymouth, Marshall County, Indiana.

4.      Defendant, TCI, LLC ("TCI") is a limited liability company.  All of the members of TCI are citizens of the States of Colorado and Arizona, and accordingly, TCI is a citizen of the States of Colorado and Arizona.

5.      At all times relevant to this insurance coverage dispute, Defendants, Jack and Cindy conducted business as Garners Truck Stop in Plymouth, Marshall County, Indiana.

6.      Ohio Farmers delivered the insurance policy at issue to its named insureds, the Garners, in Marshall County, Indiana.

7.      The matter in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand Dollars ($75,000.00).

8.      Subject matter jurisdiction is vested in this Court pursuant to 28 U.S.C. §1332(a).

9.      Venue lies in this Court pursuant to 28 U.S.C. §1391(b)(2).

10.     This Court has personal jurisdiction over the Garners and TCI, LLC.


## II.      FACTUAL ALLEGATIONS

11.     Ohio Farmers incorporates the allegations contained within Paragraphs 1 through 10 above by reference as if fully set forth herein.

12.     Ohio Farmers issued its Commercial Package Policy No. COP 5020263, issued to "Jack and Cindy Garner dba Garner's Truck Stop" as the named insureds.

13.     Ohio Farmers' records show that the policy incepted on July 25, 1986, however, those records also indicate that the policy or policies covering the period from July 25, 1986 through July 25, 1988, (hereinafter the "Policy") were destroyed.

14.     The Policy was renewed on an annual basis beginning on July 25, 1988 for the following periods of coverage:

a)      July 25, 1988 to July 25, 1989 (the "1st Renewal Policy");

b)       July 25, 1989 to July 25, 1990 (the "2nd Renewal Policy");

c)       July 25, 1990 to July 25, 1991 (the "3rd Renewal Policy");

d)       July 25, 1991 to July 25, 1992 (the "4th Renewal Policy");

e)       July 25, 1992 to July 25, 1993 (the "5th Renewal Policy");

f)       July 25, 1993 to July 25, 1994 (the "6th Renewal Policy");

g)       July 25, 1994 to July 25, 1995 (the "7th Renewal Policy");

h)       July 25, 1995 to July 25, 1996 (the "8th Renewal Policy");

i)       July 25, 1996 to July 25, 1997 (the "9th Renewal Policy");

j)       July 25, 1997 to July 25, 1998 (the "10th Renewal Policy");

k)       July 25, 1998 to August 27, 1998, cancelled for nonpayment of premiums (the "11th Renewal Policy").

The above listed renewal policies, when appropriate, are collectively referred to hereinafter as the "Policies".   True and accurate copies of the 1st Renewal Policy, 2nd Renewal Policy, 3rd Renewal Policy, 4th Renewal Policy, 5th Renewal Policy, 6th Renewal Policy, 7th Renewal Policy, 8th Renewal Policy, 9th Renewal Policy, 10th Renewal Policy, and 11th Renewal Policy are attached hereto as **Exhibits A-K**, respectively.

15.      Jack and Cynthia (collectively, the "Garners") were the owners of certain real property commonly known as 11700 U.S. 6, Plymouth, Marshall County, Indiana (the "Site"). The Site's address listed with the Marshall County Auditor is 11690 U.S. 6, Plymouth, Indiana.

16.      The Garners owned and operated a restaurant and filling station on the Site known as "Garner's 76 Truck Stop" or "Garner's Truck Stop" from 1978, until they sold the business in 1998.

17.     The Garners transferred the Site by warranty deed to non-party, Lelya Abdulla Nasser ("Nasser"), on June 30, 1998.

18.     Nasser continued to operate the Site as Fadall's Truck Stop.

19.     Nasser transferred the Site to non-party, Khalid J. Siddiqui, on November 24, 1999, by warranty deed.

20.     TCI, LLC obtained the property on December 22, 2010, through a tax sale, and a Tax Deed Title was issued to TCI, LLC on January 7, 2011.

21.     On November 29, 2012, IDEM issued a Notice of Violation and Proposed Agreed Order, Case No. 2012-21126-S, to TLC, LLC for, among other things, failing to properly upgrade or permanently close the UST system.

22.     On May 24, 2013, TCI, LLC entered into an Agreed Order in Case No. 2012-21126-S, concerning the UST system at the Site.

23.     Environmental testing conducted at the Site by TCI, LLC in 2013, revealed the presence of environmental contamination, and TCI, LLC submitted a Leaking Underground Storage Tank ("LUST") Initial Incident Report was submitted to IDEM on August 21, 2013.

24.     On December 11, 2015, TCI, LLC, through counsel, sent a demand to the Garners for costs TCI, LLC incurred in responding to IDEM's enforcement action and anticipated future costs.

25.     On July 14, 2017, the Garners, through counsel, tendered the defense and indemnification of the Garners against TCI, LLC's demand for response costs and attorney's fees under Indiana's Environmental Legal Actions statute, I.C. § 13-30-9-2 incurred or that would be incurred as a result of the UST release at the Site to Ohio Farmers (the "Claim").  A true and accurate copy of the July 14, 2017 correspondence is attached hereto as **Exhibit L**.

26.     The July 14, 2017 correspondence was Ohio Farmers' first notice of the Claim.

27.     On August 7, 2017, Ohio Farmers acknowledged receipt of the Tender and advised the Garners that, based on the available information, Ohio Farmers was unable to make a coverage determination and that Ohio Farmers was investigating the claim under a reservation of rights.

28.     Also, on August 7, 2017, Ohio Farmers requested that the Garners provide environmental reports, real estate documents, and information about operations at the Site.

29.     On September 26, 2017, the Garners provided some of the requested information to Ohio Farmers.

30.     On November 27, 2017, Ohio Farmers sent a reservation of rights letter to the Garners, that among other things, advised that Ohio Farmers was continuing its investigation under a full and complete reservation of rights to permit the Garners to provide evidence that a UST release occurred during the Policies' effective dates of coverage and reserved Ohio Farmers to deny coverage, as based on available information, there was no covered loss under the Policies (the "Reservation of Rights Letter").

31.     No additional information was provided to Ohio Farmers by the Garners in response to the Reservation of Rights Letter.

32.     On May 15, 2018, Ohio Farmers denied any duty under the Policies to defend and indemnify the Garners against the Claim and requested that the Garners enter into a Policyholder Release Agreement with Ohio Farmers.

### III.     THE COVERAGE DISPUTE

33.     Ohio Farmers incorporates the allegations contained within Paragraphs 1 through 32 of this Complaint by reference as if fully set forth herein.

## A.    THE POLICIES' CGL BI/PD COVERAGE

34.    The Policies' Commercial General Liability ("CGL") Bodily Injury and Property Damage ("BI/PD") insuring agreement[1] states in relevant part as follows:

*a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend any "suit" seeking those damages. We may at our discretion investigate any "occurrence" and settle any claim or "suit" that may result.  But:*

*(1)    The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and*

*(2)    Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.*

*b.    This insurance applies to "bodily injury" and "property damage" only if:*

*(1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and*

*(2)    The "bodily injury" or "property damage" occurs during the policy period.*

*c.    Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."*

35.    The Policies define "bodily injury" as follows:

*"Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.*

36.    The Policies define "property damage" as follows:

*"Property damage" means:*

---

[1] The policy language quoted is from Form CG 0001 1096, used from the 10th Renewal Policy through the 11th Renewal Policy.  Although the Policies underwent a number of form changes, the substance of the CGL BI/PB insuring agreements remains the same.

   **a.** *Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use hall be deemed to occur at the time of the physical injury that caused it; or*

   **b.** *Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.*

37.     The Policies define "suit" as follows:

*"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", "personal injury" or "advertising injury" to which this insurance applies are alleged. "Suit" includes:*

   **a.** *An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or*

   **b.** *Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.*

38.     The Claim does not allege any "bodily injury".

39.     The Claim does not involve "bodily injury" or "property damage" that occurred during the policy period.

40.     There is no "suit" against the Garners seeking damages because of "bodily injury" or "property damage" to which the Policies apply.

41.     TCI, LLC's claim for attorney's fees and costs does not qualify as "damages" because of "bodily injury" or "property damage".


**B.     THE POLICIES' CGL PAI COVERAGE**

42.     The Policies' CGL Personal and Advertising Injury ("PAI") insuring agreement[2] states in relevant part as follows:

   **a.** *We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury" or "advertising injury" to which this*

---

[2] The policy language quoted is from Form CG 0001 1096, used from the 10th Renewal Policy through the 11th Renewal Policy.  Although the Policies underwent a number of form changes, the substance of the CGL PAI insuring agreements remains the same.

*insurance applies. We will have the right and duty to defend any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury" or "advertising injury" to which this insurance does not apply. We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:*

*(1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and*

*(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.*

*No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS - COVERAGES A AND B.*

*b. This insurance applies to:*

*(1) "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;*

*(2) "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services;*

*but only if the offense was committed in the "coverage territory" during the policy period.*

43.    The 1st Renewal Policy through the 3rd Renewal Policy define "personal injury," in

relevant part, as follows:

*"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:*

\*\*\*

*c. Wrongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies;*

\*\*\*

44.    All of the Policies beginning with the 4th Renewal Policy define "personal injury,"

in relevant part, as follows:

*"Personal injury" means injury, other than "bodily injury," arising out of one or more of the following offenses:*

\*\*\*

> ***c.*** *The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;*

\*\*\*

45.     The Claim does not allege any "advertising injury".

46.     The Claim does not involve any "personal injury" offense committed during the policy period.

47.     There is no "suit" against the Garners seeking damages because of "personal injury" or "advertising injury" to which the Policies apply.

48.     TCI, LLC's claim for attorney's fees and costs does not qualify as "damages" because of "personal injury" or "advertising injury".

**C.     FAILURE TO COMPLY WITH THE POLICIES' NOTICE PROVISIONS**

49.     The Policies include the following notice provisions[3]:

*SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS*

\*\*\*

> ***2.  Duties In The Event Of Occurrence, Claim Or Suit.***

> ***a.*** *You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:*

> *(1) How, when and where the "occurrence" or offense took place;*

> *(2) The names and addresses of any injured persons and witnesses; and*

---

[3] The policy language quoted is from Form CG 0001 1096, used from the 10th Renewal Policy through the 11th Renewal Policy.  Although the Policies underwent a number of form changes, the substance of the notice provisions remains the same.

9

*(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.*

**b.** *If a claim is made or "suit" is brought against any insured, you must:*

*(1) Immediately record the specifics of the claim or "suit" and the date received; and*

*(2) Notify us as soon as practicable.*

*You must see to it that we receive written notice of the claim or "suit" as soon as practicable.*

**c.** *You and any other involved insured must:*

*(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"*

\*\*\*

50.     TCI, LLC sent their demand to the Garners on December 11, 2015.

51.     The Garners, however, did not notify Ohio Farmers of the Claim until July 14, 2017, over 19 months after the Garners first learned of the loss.

52.     The Garner's failed to comply with the Policies' notice provisions.

53.     The Garners' late notice was unreasonable.

54.     The Garners' late notice resulted in prejudice to Ohio Farmers as Ohio Farmers lost the opportunity to negotiate a settlement of the Claim in December 2015, before TCI, LLC occurred additional costs in the investigation and remediation of the UST release.

## V.     COUNT FOR DECLARATORY JUDGMENT

55.     Ohio Farmers incorporates the allegations contained within Paragraphs 1 through 54 of this Complaint by reference as if fully set forth herein.

56.     An actual controversy exists between the parties hereto concerning whether Ohio Farmers has a duty under the Policies to defend Jack and Cynthia against the Claim.

(a)     Jack and Cynthia contend that Ohio Farmers has a duty under the Policies to defend Jack and Cynthia against the Claim; and

(b)     Ohio Farmers contends that it does not have a duty under the Policies to defend Jack and Cynthia against the Claim.

57.     An actual controversy exists between the parties hereto concerning whether Ohio Farmers has a duty under the Policy to indemnify Jack and Cynthia against the Claim.

(a)     Jack and Cynthia contend that Ohio Farmers has a duty under the Policies to Jack and Cynthia against the Claim; and

(b)     Ohio Farmers contends that it does not have a duty under the Policies to indemnify Jack and Cynthia against the Claim.

## VI.     THE DEMAND FOR RELIEF

WHEREFORE, Ohio Farmers respectfully requests that the Court enter an Order:

(a)     Declaring that Ohio Farmers has no duty under the Policies to defend Jack and Cynthia against the Claim;

(b)     Declaring that Ohio Farmers has no duty under the Policies to indemnify Jack and Cynthia against the Claim;

(c)     Awarding Ohio Farmers its costs; and

(d)     Granting Ohio Farmers such further relief as the Court deems just and proper.


Dated:   October 23, 2018

Respectfully submitted,


s/ Linda L. Vitone
Linda L. Vitone, Atty. No. 23389-29
SMITH FISHER MAAS HOWARD & LLOYD, P.C.
7209 N. Shadeland Ave.
Indianapolis, Indiana 46250
Tel: (317) 578-1900; Fax: (317) 578-1330
E-mail:   lvitone@smithfisher.com
*Attorneys for Ohio Farmers Insurance
   Company*

12